UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NASHROLLAH GASHTILI, an individual, and INTEGRATED DYNAMICS SOLUTIONS, INC., a California Corporation,<br><br>Plaintiffs,<br>v.<br>JB CARTER PROPERTIES II, LLC, a Nevada limited liability company, et al.,<br><br>Defendants. | Case No. 2:12-cv-00815-MMD-PAL<br><br>[Consolidated with Case. No. 2:12-cv-10156-MMD-PAL]<br><br>AMENDED ORDER<br><br>(Defs.' Motion to Dismiss or in the Alternative Motion for More Definite Statement – dkt. no. 9)<br><br>(Defendant Fastran, LLC's Motion for a Preliminary Injunction and Permanent Injunction – dkt. no. 3 in case no. 2:12-cv-01156) |

Before the Court is Defendants JB Carter Properties II, LLC (JB"), Bartus Carter, and Fastran, LLC's Motion to Dismiss or in the Alternative Motion for More Definite Statement (dkt. no. 9).

On November 9, 2012, the parties consolidated this case with 2:12-cv-01156-MMD-VCF, *Fastran LLC v. Gashtili*. (Dkt. no. 21.) The two cases involve many of the same parties,[1] but LLC is the Plaintiff in the later filed action. Because the cases have

---

[1] JB and Carter are not parties to the second suit; Fastran, Inc. is only a party to the second suit. As explained below, all Plaintiffs in the first suit (2:12-cv-00815) are related to all Defendants in the second suit (2:12-cv-01156), and all Defendants in the first filed suit are related to Fastran, LLC, the Plaintiff in the second suit.

been consolidated, and to avoid confusion, the Court refers to LLC as a Defendant. LLC has filed a Motion for a Preliminary Injunction and Permanent Injunction (case no. 2:12-cv-01156, dkt. no. 3).

**I.   BACKGROUND**

   **A.   Development of Cash Access Software Program**

Nashrollah Gashtili owns Integrated Dynamics Solutions, Inc. ("IDS"), a computer application systems company. (Dkt. no. 1 at 2.) In 2006, Gashtili was approached by third parties and their representatives about creating a casino cash access software program. In turn, the third parties would market the product and sell it to casinos. Plaintiffs assert that as a result of the third party representations, Gashtili and the third parties formed Fastran, Inc. ("INC."), a Delaware corporation.

Gashtili authored the casino cash access software program. According to Plaintiffs, Gashtili and IDS then entered into an agreement with INC. whereby IDS and Gashtili would receive payment for licensing and customizing the software.

After this point, Plaintiffs represent that INC. acquired many distributors and its cash access systems were introduced into the casino industry. The casinos shared revenue with the distributor and INC. based on a revenue-sharing agreement.

   **B.   Defendants' Initial Involvement**

In July 2007, INC.'s representatives approached Mr. Carter, Defendant JB's principal. They told Carter that INC. was looking for investors to purchase 40% of the corporation for approximately $1.25 million. (Dkt. no. 1 at ¶ 9.) During negotiations about JB's investment in INC. the parties discussed several different proposals. Eventually the parties agreed that they would jointly form a new business entity, Fastran LLC ("LLC"), along with JB and two men named Larry Brown and John Bryant.[2] JB would invest in LLC rather than INC. JB was appointed the initial managing member of LLC.

---

[2] Bryant subsequently sold his interest in LLC *pari passou* to the other members of the company.

2

On or about November 29, 2007, INC. sold all of its assets to LLC. As part of this sale, Defendants allege that INC. transferred ownership of the copyrighted software to LLC.

**C.  State Court Litigation and Copyright Registration**

The parties provide competing allegations that after the transfer of assets, either JB (and/or Carter) or Gashtili (and/or IDS) wrongfully retained and used the copyrighted software.

Defendants assert that Gashtili and IDS retained control over the copyrighted software, despite LLC's belief that the copyrighted software was one of INC.'s assets that had been transferred to LLC. Plaintiffs dispute this and maintain that IDS owns the copyright in the software; INC. and later LLC merely had a non-exclusive license in the software.

Plaintiffs, on the other hand, allege that after LLC was formed, JB and Carter sent the technical design documents, source code, backend application, and reporting tools for the software overseas and had programmers in India generate a replica of the copyrighted software.[3] Plaintiffs claim that JB and Carter then took several steps to profit from this replica software. First, JB and Carter siphoned off existing and potential customers of LLC to JB's own companies, ATM Merchant System ("ATMSS") and Multi Choice Cash ("MCC"). Plaintiffs represent that because of this, LLC has no remaining viable customer accounts. ATMSS and MCC then promoted the allegedly infringing replica software to LLC's former clients as a new, legitimate competitor to LLC's copyrighted software. Second, JB representatives, in their capacity as the managing members of LLC, used opportunities to negotiate with casinos and clearing houses on behalf of LLC to establish favorable deals for JB's other companies.

///

---

[3] IDS claims the source code and design documents for the software was and continues to be a closely guarded trade secret. The creation of the replica software forms the basis for IDS' trade secret misappropriation claim.

3

The parties also provide conflicting allegations of wrongdoing in connection with INC.'s bank account. Plaintiffs assert that Carter's brother-in-law, who had access to INC.'s bank accounts for the limited purpose of processing certain cash access software transactions, transferred $150,000 from INC.'s bank accounts to JB's accounts in or around September 2008. Plaintiffs allege that Carter's brother-in-law did this at JB and Carter's direction although Defendants had no authority to order the transaction. For their part, Defendants maintain that Gashtili wrongfully transferred monies from INC.'s account into his personal bank account and also wrongfully paid LLC's bills using funds in INC.'s account. Defendants maintain that these transfers violated the parties' contractual agreement.

On December 22, 2009, Defendant JB filed a derivative lawsuit on behalf of LLC against Gashtili alleging claims for conversion, breach of contract, and related claims in connection with JB's allegation that Gashtili's withdrawing funds from the INC. bank account violated the terms of LLC's operating agreement.

### D. The Present Consolidated Action

Shortly after JB filed the complaint in state court, on or about January 26, 2010, IDS applied for a copyright registration certificate in the software. In the application, the software's date of creation is listed as 2006 and its date of publication is listed as January 15, 2007. IDS owns copyright Registration Number TX 7-051-036. The copyright is in the "IDS Cash Access System," a computer software program.

Plaintiffs contend that Defendants threatened to sue Plaintiffs in federal court, claiming LLC owns the copyright in the software and that Gashtili and IDS's use therefore constitutes copyright infringement. However, IDS and Gashtili continued to use the software and, as mentioned, obtained copyright registration of the software in IDS's name.

In response, Plaintiffs filed suit, requesting declaratory relief under 18 U.S.C. § 2201 and Fed. R. Civ. P. 57. Plaintiffs ask the Court to declare that Plaintiff IDS is the owner of the copyrighted software at issue, and that its use of the software is non-

infringing. The Complaint also alleges misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, fraud in inducement, and breach of fiduciary duty.

Defendants later filed suit in federal court, requesting that the Court declare LLC the owner of the copyrighted software at issue and determine that Plaintiffs are infringing upon LLC's copyright.[4]  (Case no.  2:12-cv-01156-MMD-VCF, dkt. no. 1 at ¶¶ 48-52.)

## II. MOTION TO DISMISS

Defendants' Motion to Dismiss argues that Plaintiffs' suit should be dismissed for several reasons: (1) the Court should dismiss the state law claims alleged in Plaintiffs' Complaint; (2) Plaintiff Gashtili should be dismissed under Fed. R. Civ. P. 12(b)(1) because he lacks standing; (3) this case should be dismissed under Fed. R. Civ. P. 12(b)(7) for Plaintiffs' failure to join a necessary party, INC.; (4) Plaintiffs must be compelled to amend the Complaint to join INC. as a necessary party pursuant to Fed. R. Civ. P. 19; and (5) Plaintiffs must amend their Complaint under Fed. R. Civ. P. 12(e) to provide the Court and the parties with a more definite pleading.

### A. 12(b)(6) Motion to Dismiss State Law Claims

Defendants assert that the Court should decline to exercise supplemental jurisdiction over the state law claims in the Complaint under 28 U.S.C. § 1367(c) because these claims have already been remanded to state court and remain pending there.  In fact, Gashtili removed the 2009 case filed by JB to this Court, but the case was subsequently remanded.  After reviewing the counterclaims alleged by Gashtili in the state court case, the Court agrees with Defendants that all of the state court claims alleged in Plaintiffs' Complaint (dkt. no. 1) are nearly identical to those alleged in the state court countercomplaint:

---

[4]Plaintiffs initially argued that LLC's decision to file this second complaint is procedurally improper because the allegations constitute compulsory counterclaims under Fed. R. Civ. P. 13.  However, at oral argument regarding these Motions, Plaintiffs informed the Court that this argument is mooted given the stipulation to consolidate.

- The misappropriation of trade secrets allegations in both complaints claim that JB and Carter were entrusted with valuable trade secrets in the form of confidential information and that JB and Carter wrongfully disclosed those trade secrets (*compare* dkt. no. 1 at ¶¶ 49-56 *with* dkt. no. 31-2 at ¶¶ 35-42);

- The breach of contract allegations in the complaints allege that JB and Carter were required to loan monies to the LLC when needed but failed to do so (*compare* dkt. no. 1 at ¶¶ 57-63 *with* dkt. no. 31-2 at ¶¶ 43-49);

- The breach of the implied covenant of good faith and fair dealing claims in both complaints allege that through their actions, omissions and false representations, Carter and JB violated the implied covenant of good faith and fair dealing inherent in the contract between JB, Carter, and Gashtili regarding the LLC's formation (*compare* dkt. no. 1 at ¶¶ 64-68 *with* dkt. no. 31-2 at ¶¶ 50-54);

- The conversion allegations in both complaints allege that Carter and JB wrongfully exerted dominion over the software and design documents belonging to either Gashtili (in the state court complaint) or IDS (in the federal court complaint) (*compare* dkt. no. 1 at ¶¶ 69-73 *with* dkt. no. 31-2 at ¶¶ 55-59);

- The fraud in the inducement allegations in both complaints assert that Carter and JB made false representations regarding the formation of the contract establishing the LLC (*compare* dkt. no. 1 at ¶¶ 74-85 *with* dkt. no. 31-2 at ¶¶ 60-71);

- The breach of fiduciary duty allegations in both complaints involve Carter and JB's breach of the duty they owed Gashtili as co-members in the LLC (*compare* dkt. no. 1 at ¶¶ 86-90 *with* dkt. no. 31-2 at ¶¶ 72-76).

To avoid the risk of inconsistent judgment on these substantially similar claims, the Court declines to exercise jurisdiction under 28 U.S.C. § 1367(c). Further, at the December 4, 2012, hearing, the parties informed the Court that the state court litigation is scheduled for trial in January 2013. Accordingly, there is a high potential risk that the principles of res judicata would preclude the Court from hearing the state law claims asserted in Plaintiffs' Complaint. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.")

The Court therefore grants Defendants' Motion to Dismiss as it relates to Plaintiffs' state law claims.

### B. 12(b)(1) Motion to Dismiss Plaintiff Gashtili

Defendants assert that Gashtili lacks standing to sue because he is not the alleged or actual owner of the copyrighted software.

The standing doctrine under the U.S. Constitution requires that those seeking to invoke federal jurisdiction "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy Article III, the plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

The "shareholder standing rule" provides "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Zurich Am. Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. 2:12-CV-00264, 2012 WL 2934756, at *2 (E.D. Cal. July 18, 2012) (citing *Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990); *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation.")). Gashtili has not demonstrated that IDS' management has already refused to pursue this action. Quite the contrary, IDS is pursuing the same claim for infringement here. Nor does Gashtili claim to own the

///
///
///
///

copyrighted software independently of IDS. The Court accordingly grants Defendants' Motion to Dismiss Plaintiff Gashtili.[5]

### C. 12(b)(7) Motion to Dismiss for Failure to Join INC. and Motion to Compel Plaintiffs to Amend the Complaint to add INC. as a Party

In their Motion, Defendants argue that Plaintiffs failed to join a necessary party, INC., and that the Complaint should be dismissed. However, INC. is a named Defendant in the later, now-consolidated case. Because of this, at the December 4, 2012, hearing regarding pending motions in this case, the parties agreed that this Motion is moot.

Defendants alternatively argued that Plaintiffs should be compelled to amend the Complaint to add INC. as a party pursuant to Fed. R. Civ. P. 19. However, as INC. is a named Defendant in the later, now-consolidated case, at the December 4, 2012, hearing the parties agreed that this Motion is also moot.

### D. Motion for a More Definite Statement

Defendants assert that Plaintiffs failed to plead fraud with particularity as required under Fed. R. Civ. P. 9(b), and must be compelled to amend the Complaint to cure this defect. However, because the state law fraud in the inducement claim is dismissed in this order, this Motion is denied as moot.

## III. MOTION FOR A PRELIMINARY INJUNCTION AND A PERMANENT INJUNCTION

Defendant LLC seeks a preliminary injunction on the basis of its copyright infringement claims.

To qualify for a preliminary injunction, LLC must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of

///

---

[5] Notably, while Gashtili may have had standing to bring some of the state law claims involving the contractual disputes between JB, Carter, and himself in his individual capacity, those claims have been dismissed. The Order only addresses Gashtili's standing in regards to the copyright infringement claim and the declaration of copyright ownership and non-infringement.

8

hardships favors LLC; and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A. Likelihood of Success on the Merits

To succeed on a copyright infringement claim, LLC must establish that (1) it owns the copyright at issue; and (2) its work has been copied by IDS. *See Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977); *see also* 17 U.S.C. § 106.[6] IDS argues that LLC cannot demonstrate a likelihood of success because LLC is not the owners of a valid copyright. IDS does not challenge the second element of the copyright infringement claim, and thus concedes for the purposes of this Motion that the works have been copied.

Ownership of the copyrighted software is the central issue in this case. Defendants assert that INC. was the author and owner of the copyrighted software and subsequently transferred to LLC all ownership interest it had in the copyrighted software. IDS, however, claims that it is the sole owner of the copyrighted software. IDS asserts that it has never sold, transferred, or conveyed its ownership of the copyrighted software, and that LLC at best holds a limited, revocable, non-exclusive, non-transferable license for the software's use.

///
///

---

[6] 17 U.S.C. § 106 provides: "the owner of copyright under this title has exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, or dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, or dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."

The parties agree that IDS has registered the copyright at issue, and IDS attached a Copyright Certificate of Registration (case no. 12-1156, dkt. no. 12-1) to its Opposition to the Motion for Preliminary Injunction.

A copyright certificate establishes prima facie evidence of the validity of a copyright and of the facts in the certificate. 17 U.S.C. § 410(c). Copyright registration thus creates a presumption that the owner listed on the registration document in fact owns the copyrighted item. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 987 (9th Cir. 2009) ("A certificate of registration raises the presumption of copyright validity and ownership."); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109-1110 (9th Cir. 1998). The presumption is rebuttable. *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). To rebut the presumption, LLC must offer some evidence to dispute or deny the IDS' prima facie case. *See, e.g.*, *North Coast*, 972 F.2d at 1033; *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763 (2d Cir. 1991).

LLC attempts to rebut IDS's prima facie evidence of ownership by arguing that Gashtili did not create the work on behalf of IDS. Rather, Gashtili created the software as a work for hire on behalf of INC., and INC. in turn transferred its ownership to LLC. Therefore, LLC is the rightful owner of the copyrighted software, and IDS's use is infringing. IDS counters that (1) assuming *arguendo* that INC. owned the copyright, there was never a valid transfer of ownership under the applicable copyright statute; and (2) should the Court find there was a statutorily-valid transfer, the transfer is nonetheless illegitimate because IDS and not INC. is the rightful owner of the copyrighted software.

IDS is correct that "the law couldn't be clearer. . . [w]hile the copyright owner can sell or license his rights [in the copyrighted work] to someone else, section 204 of the Copyright Act invalidates a purported transfer of ownership unless it is in writing." *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990); *see also* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in

writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."). "Copyright law dovetails nicely with common sense by requiring that a transfer of copyright ownership be in writing. Section 204 ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Id.* at 557 (citations omitted).

LLC provides evidence that INC. transferred all of its assets to LLC, which it claims includes the copyrighted software. However, this evidence is in the form of Gashtili's deposition testimony, *not* a written transfer of ownership. At the December 4, 2012, hearing, both parties agreed that there is no written, signed document transferring ownership of the cash access system software from INC. to LLC.[7] Therefore, LLC cannot claim to own the software by way of transfer. Nor can it assert ownership via the work for hire doctrine, because LLC asserts that Gashtili or IDS created the software for *INC.*, not for LLC. (*See, e.g.,* case no. 2:12-cv-01156-MMD-PAL, dkt. no. 3 at 6, 14.)

Because LLC cannot demonstrate that there was a written transfer of copyright ownership from either IDS or INC. to LLC, LLC's remaining arguments regarding access and substantial similarity need not be addressed. LLC has not demonstrated that it is likely to succeed on its copyright infringement claim.

### B.     Likelihood of Irreparable Harm

To prevail on this Motion, LLC must establish that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay,* 547 U.S. at 391. That is, LLC must establish that the harm caused by IDS and its affiliates cannot be remedied except through injunctive relief. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007).

///

---

[7] Defendants contend that the software was transferred from INC. to LLC via an asset purchase agreement, although they also conceded that the arrangement was rather informal and was not evidenced by any written agreement.

11

LLC asserts that it will suffer loss of market share and damage to its goodwill should IDS maintain control of the copyrighted software. Under LLC's version of the facts, IDS's continued control of LLC's asset would likely result in such a harm to LLC. This factor therefore weighs in LLC's favor.

### C.     Balance of the Hardships

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987); *see also Int'l Jensen v. MetroSound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of hardships a court must consider the impact granting or denying a motion for a preliminary injunction will have on the respective enterprises."). "[A] court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in the light of all the factors so requires." *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990).

Here, the balance of hardships favors neither party. Either LLC infringes upon IDS's copyright, and causes harm to IDS's reputation, goodwill, and brand, or IDS infringes upon LLC's copyright and causes LLC a similar harm. The parties provide no further specifics regarding how the disposition of LLC's Motion would cause them hardship.

### D.     Public Interest

Courts "must consider the public interest as a factor in balancing the hardships when the public interest may be affected." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). "The public interest analysis for the issuance of a preliminary injunction requires [the court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Indep. Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (*quoting Hybritech Inc. v. Abbott Lab.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)). LLC argues that "public policy favors" granting the injunction "to protect [its] copyright ownership." However, the

Court's analysis of the infringement claim demonstrates that LLC is unlikely to establish copyright ownership. The public interest would not be furthered by issuing an injunction.

Because LLC has not demonstrated a likelihood of success on the merits, and the other preliminary injunction factors do not weigh significantly in its favor, the Court denies LLC's Motion for a Preliminary and Permanent Injunction.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or in the Alternative Motion for More Definite Statement (dkt. no. 9) is GRANTED IN PART and DENIED IN PART as follows:

- The 12(b)(6) Motion to Dismiss State Law Claims is GRANTED.
- The Motion to Dismiss Nashrollah Gashtili as a Plaintiff is GRANTED;
- The 12(b)(7) Motion to Dismiss for Failure to Join Fastran, Inc. is DENIED AS MOOT.
- The Motion to Compel Plaintiffs to Amend their Complaint is DENIED AS MOOT.
- The Motion for More Definite Statement is DENIED AS MOOT.

IT IS FURTHER ORDERED that Consolidated Defendant LLC's Motion for Preliminary and Permanent Injunction (case no. 2:12-cv-01156-MMD-PAL, dkt. no. 3) is DENIED.

DATED THIS 22nd day February 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE